**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CLARENCE JENKINS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

CASE NO: 8:04-CV-2546-T-30EAJ
Crim. Case No: 8:03-CR-184-T-30EAJ

## ORDER and NOTICE OF EVIDENTIARY HEARING

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (Dkt. #1), Petitioner's Memorandum in support thereof (Dkt. #2), the Government's Response (Dkt. #5), and Petitioner's Reply (Dkt. #8). Upon review of the briefs and the underlying criminal proceedings, this Court determines that grounds two, three, four and five should be summarily denied, but that it is necessary to have an evidentiary hearing concerning the factual basis concerning ground one.

### BACKGROUND

On June 26, 2003, Petitioner, Clarence Jenkins (hereinafter referred to as "Jenkins" or "Petitioner") and thirteen others were indicted with one count of conspiracy to possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine and fifty (50) grams of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §846, 841(b)(1)(A)(ii) and

841(b)(1)(A)(iii).  On August 25, 2003, Petitioner signed a written plea of guilty admitting the following facts:

> The defendant was a member of a conspiracy that involved five (5) kilograms or more of cocaine and fifty (50) grams or more of cocaine base. Specifically, from September, 1997 until the early months of 2003, law enforcement discovered that an organization was distributing kilogram quantities of cocaine and cocaine base in the Sarasota/Bradenton area. As the investigation into the organization progressed, law enforcement discovered from toll records that in late 2002, and early 2003, there was a large volume of telephonic contact amongst a number of members of the conspiracy including Joslyn Walker; Diamond Mills; Patrick Lavender; Kenith Turner; Wanetta Parker; Courtney Allen; Sean Butler; and Kelvin Turner.  Thus, in April, 2003, law enforcement conducted both federal and state wire taps.
>
> Based upon the investigation, law enforcement discovered that Joslyn Walker was distributing multi-kilogram quantities of powder cocaine from South Florida to Sarasota on a regular basis. Walker would supply Diamond Mills; Patrick Lavender; Kenith Turner; Sean Butler; Courtney Allen; and other members of the conspiracy with kilogram quantities of cocaine. The members of the conspiracy who would obtain cocaine from Walker would either sell the cocaine or use the cocaine to manufacture cocaine base and then sell the cocaine base.
>
> The federal and state wire taps demonstrated that, amongst others, Wanetta Parker and Kelvin Turner were obtaining cocaine and/or cocaine base from Mills and then distributing it to other members of the conspiracy. Also, the federal and state wire taps demonstrated that Kenith Turner was supplying Troy Tasher; Clarence Jenkins; Jeremie Johnson; and Clifton Johnson with cocaine and/or cocaine base; and that Cedric White supplied Kenith Turner with one kilogram of cocaine.
>
> During the investigation law enforcement conducted a number of controlled buys for cocaine and/or cocaine base with various members of the organization, including Patrick Lavender; Kelvin Turner; Calvin Tuner (sic); Courtney Allen; Sean Butler; and Clifton Johnson.
>
> In early May, 2003, at the conclusion of the state and federal wire taps, law enforcement arrested Walker; Mills; Lavender; Kenith Turner; and Parker. During the arrests law enforcement conducted search warrants at Mills and

Lavender's residence, Kenith Turner's residence, and Parker's residence. Located at Mills and Lavender's residence was approximately 29 ounces of cocaine, one ounce of cocaine base, wrappings four (4) for kilograms of cocaine, and approximately $50,000.00 in U.S. currency bundled with rubber bands. Located in Kenith Turner's residence was approximately $41,000.00 of U.S. currency, approximately seven (7) kilogram wrappings, and two Pyrex cooking pots which tested positive for cocaine residue. Located in Parker's residence was a quantity of cocaine base, along with pots and pans used to cook cocaine base.

A variety of members of the conspiracy made statements to law enforcement regarding the conspiracy. Specifically, post-<u>Miranda</u>, Walker stated that on the day of his arrest he traveled to Sarasota from South Florida to deliver one (1) kilogram of cocaine to Mills, and further admitted that he had made prior trips to Sarasota to deliver cocaine. Kenith Turner, during a post-<u>Miranda</u> interview, stated that he was out of cocaine and he was intending to purchase two (2) kilograms of cocaine from Mills, and that on the day of his arrest he had previously purchased one (1) kilogram of cocaine from Mills at Mills' residence when Walker arrived. Parker stated that she sells cocaine for Mills, and that she is paid based upon the amount of cocaine she sells. Further other members of the conspiracy admitted to selling cocaine and/or cocaine base, including Sean Butler; Courtney Allen; Clarence Jenkins; Calvin Turner; and Kelvin Turner.

On September 3, 2003, Petitioner entered a plea of guilty in open court in front of the Magistrate Judge and was subsequently sentenced by this Court on December 12, 2003. Judgment was entered December 16, 2003, which became final on December 31, 2003. On November 22, 2004, Petitioner timely filed this motion to vacate his sentence raising the following five grounds:

**<u>Ground One:</u>**   Counsel was ineffective for failing to file a notice of appeal for defendant when defendant had instructed counsel to do so.

**<u>Ground Two:</u>**   Guilty plea involuntarily entered where counsel provided ineffective assistance in advising defendant the nature of the charges in which defendant was pleading.

**Ground Three:**   Counsel was ineffective for failing to object to defendant's Fifth and Sixth Amendment rights being violated by the indictment not including defendant's prior convictions within the indictment and the enhancement not being found beyond a reasonable doubt standard in order to sentence defendant as a career offender in light of <u>Apprendi v. New Jersey</u>.

**Ground Four:**   Defendant's appeal waiver was entered involuntarily as a result of ineffective assistance of counsel.

**Ground Five:**   Counsel was ineffective for failing to argue that (for) <u>Apprendi</u> purposes, the maximum sentence to be used is the maximum sentence a judge may impose under the sentencing guidelines and not the maximum sentence under the statute, for the career offender provisions.

## DISCUSSION

**Ground One:**   Counsel was ineffective for failing to file a notice of appeal for defendant when defendant had instructed counsel to do so.

In support of ground one, Petitioner asserts that "(a)t the conclusion of sentencing in this case, defendant instructed counsel to file an appeal on the behalf of defendant."

Whether defendant told counsel to file an appeal within the ten day period is a factual issue that must be resolved by an evidentiary hearing. See <u>Gomez-Diaz v. United States</u>, 433 F. 3d 788 (11th Cir. 2005). Therefore, an evidentiary hearing will be scheduled to resolve this issue.

**Ground Two:**   Guilty plea involuntarily entered where counsel provided ineffective assistance in advising defendant the nature of the charges in which defendant was pleading.

In support of ground two, Petitioner contends that his counsel failed to advise him that in order for him to be guilty of conspiracy he must have been in an agreement to distribute five kilograms of cocaine which was the object of the conspiracy. Further, he

contends that the Court, at the plea hearing on September 3, 2003, failed to state a sufficient factual basis for his guilty plea.

A guilty plea is valid when a court adequately explains to a defendant the elements of the charge and the factual basis which the government contends will be proven at trial. Contrary to Petitioner's assertions, that was done in this case. At the change of plea hearing, the Magistrate Judge explained as follows:

> THE COURT: All right. I'm going to go over the plea agreement, but I think what I'm going to do first is after we talk about the charge and representation by counsel, I'm going to go right into the factual basis so that if there are any things we need to address, then we can do that at the outset.
>
> This plea agreement provides that each of you is going to plead guilty to Count 1 of the Superseding Indictment which I'm going to describe. That Superseding Indictment returned on June 26th of this year alleges that from an unknown date, but at least in or around September of 1997, through on or about May 6, 2003 in Sarasota County, in the Middle District of Florida and elsewhere, each of you three and a number of other individuals, the Defendants, did knowingly and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to possess with intent to distribute five kilograms or more of a substance containing a detectable amount of cocaine, a Schedule 2 controlled substance, and to possess with intent to distribute 50 grams or more of a substance containing a detectable amount of cocaine base, also known as crack, a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841. Do each of you understand what this charge is about?
>
> THE DEFENDANT MILLS:     Yes, Your Honor.
>
> THE DEFENDANT TURNER:    Yes, ma'am.
>
> THE DEFENDANT JENKINS:   Yes, ma'am.
>
> THE COURT:   Have you had a chance to review the Indictment and discuss your case fully with your attorney?

    THE DEFENDANT MILLS:    Yes, Your Honor.

    THE DEFENDANT TURNER:    Yes.

    THE DEFENDANT JENKINS:    Yes, ma'am.

    THE COURT:    Have you had enough time with your attorney to decide what's best for you?

    THE DEFENDANT MILLS:    Yes, Your Honor.

    THE DEFENDANT TURNER:    Yes.

    THE DEFENDANT JENKINS:    Yes, ma'am.

    THE COURT: Okay. I want to be sure about that. Is there anybody who needs to talk to his attorney now or wants to put this off for another days 'cause you need more time with your attorney? Anybody who needs more time?

    THE DEFENDANT MILLS:    No, Your Honor.

    THE DEFENDANT TURNER:    No.

    THE DEFENDANT JENKINS:    No, ma'am

. . .

    THE COURT:    Now, in order to prove this drug conspiracy against you, even if you plead guilty, the Government has to show me facts that show that you've committed this crime.

    Now, the essential elements of a drug conspiracy are a showing that two or more people in some way came to a mutual understanding to try to accomplish a common and unlawful plan as alleged in the Superseding Indictment.

    Here, that plan was either the possession with intent to distribute five kilograms or more of cocaine, or the possession with intent to distribute 50 grams or more of crack cocaine. It could have been both, both types of crack

cocaine. It could have been both, both types of cocaine or it could have been one or the other.

The Government has to show that you, the Defendant, knowing the unlawful purpose of the plan, willfully joined in it. And the Government has to show that the person you conspired with, at least one of those people, was not a Government agent or informant, but was someone who shared your criminal intent. Do you understand what these things mean, Mr. Mills?

THE DEFENDANT MILLS: Yes, ma'am.

THE COURT: Mr. Turner?

THE DEFENDANT TURNER: Yes, ma'am.

THE COURT: And Mr. Jenkins.

THE DEFENDANT JENKINS: Yes, ma'am.

THE COURT: Okay. Do we have a common factual basis?

MR. PORCELLI: Yes, Your Honor.

THE COURT: All right. I want you to listen very carefully to what the prosecutor says are the facts in support of the charge against you, particularly with regard to your involvement.

Now, I realize that each of you may not know precisely what the other Defendants did, but with regard to your involvement, I'm going to be asking you if you have any disagreement with any of these facts that you hear from the prosecutor, so please listen.

MR. PORCELLI: Your Honor, if the United States - - the United States would be able to establish beyond a reasonable doubt if this case went to trial that these Defendants were members of a conspiracy that involved five kilograms or more of cocaine and/or 50 grams or more of cocaine base.

Specifically, from September, 1997 until the early months of 2003, law enforcement discovered that an organization was distributing kilogram quantities of cocaine and cocaine base in the Sarasota/Bradenton area.

As the investigation of the organization progressed, law enforcement discovered from toll records that in late 2002 and early 2003, there was a large volume of telephonic contact amongst a number of members of the conspiracy, including Joslyn Walker, Damond Mills, Patrick Lavender, Kenith Turner, Wanetta Parker, Courtney Allen, Sean Butler and Calvin Turner.

Thus, in April, 2003, law enforcement conducted both Federal and State wiretaps. Based upon the investigation, law enforcement discovered that Joslyn Walker was distributing multi-kilogram quantities of powder cocaine from South Florida to Sarasota on a regular basis.

Walker would supply Damond Mills, Patrick Lavender, Kenith Turner, Sean Butler, Courtney Allen and other members of the conspiracy with kilogram quantities of cocaine. The members of the conspiracy who would obtain cocaine from Walker would either sell the cocaine or use the cocaine to manufacture cocaine base and then sell the cocaine base.

Federal and State wiretaps demonstrated that amongst others, Wanetta Parker and Calvin Turner would obtain cocaine and/or cocaine base from Mills and then distribute it to other members of the conspiracy.

Also, the Federal and State wiretaps demonstrated that Kenith Turner was supplying Troy Tasher, Clarence Jenkins, Jeremie Johnson and Clifton Johnson with cocaine and/or cocaine base, and that Cedric White supplied Kenith Turner with one kilogram of cocaine.

During the investigation, law enforcement conducted a number of controlled buys for cocaine and/or cocaine base with various members of the organization including Patrick Lavender, Calvin Turner, Kelvin Turner, Courtney Allen, Sean Butler and Clifton Johnson.

In early May, 2003, at the conclusion of the State and Federal wiretaps, law enforcement arrested Walker, Mills, Lavender, Kenith Turner and Parker. During the arrest, law enforcement conducted search warrants at Mills' and Lavender's residence, Kenith Turner's residence and Parker's residence. Located at Mills' and Lavender's residence was approximately 29 ounces of cocaine, one ounce of cocaine base, wrappings for four kilograms of cocaine, and approximately $50,000 in U. S. Currency bundled with rubberbands.

Located in Kenith Turner's residence was approximately $41,000 of U. S. currency, approximately seven kilogram wrappers, two Pyrex cooking pots

which tested positive for cocaine residue. Located in Wanetta Parker's residence was a quantity of cocaine base, along with pots and pans used to cook cocaine base.

A variety of the members of the conspiracy made statements to law enforcement regarding the conspiracy. Specifically, post-Miranda, Mr. Walker stated that, one, on the day of his arrest, he traveled to Sarasota from South Florida to deliver one kilogram of cocaine to Mr. Mills, and further admitted that he had made prior trips to Sarasota to deliver cocaine.

Kenith Turner during a post-Miranda interview stated he was out of cocaine and he was intending to purchase two kilograms of cocaine from Mr. Mills, and that on the day of his arrest, he previously purchased one kilogram of cocaine from Mr. Mills at Mr. Mills' residence when Walker arrived.

Ms. Parker stated that she sells cocaine for Mills and that she is paid based upon the amount of cocaine she sells.

Further, other members of the conspiracy admitted to selling cocaine and/or cocaine base, including Sean Butler, Courtney Allen, Clarence Jenkins, Calvin Turner and Kelvin Turner.

. . .

THE COURT:   Mr. Jenkins, did you hear the facts that the prosecutor talked about?

THE DEFENDANT JENKINS:   Yes, ma'am.

THE COURT:   Do you have any disagreement with any of those facts?

THE DEFENDANT JENKINS:   No, ma'am.

THE COURT:   All right. So are those facts true?

THE DEFENDANT JENKINS:   Yes, ma'am.

(Guilty plea hearing transcripts, pages 13-20.)

The statements made by Petitioner in open court are presumed to be true. United States v. Gonzalez-Mercado, 808 F.2d 796 (11th Cir. 1987). A defendant will not be heard to disavow them at some later time in an attempt to overcome his guilty plea. Harvey v. United States, 850 F.2d 388 (8th Cir. 1988). Here, Petitioner was properly advised of both the elements of the offense and the underlying factual basis, and he acknowledged his understanding and agreement. His bald assertions of misunderstanding are unavailing. Harvey, at 396. Therefore, ground two will be denied.

**Ground Three:** Counsel was ineffective for failing to object to defendant's Fifth and Sixth Amendment rights being violated by the indictment not including defendant's prior convictions within the indictment and the enhancement not being found beyond a reasonable doubt standard in order to sentence defendant as a career offender in light of Apprendi v. New Jersey.

In support of ground three, Petitioner argues:

Counsel was clearly ineffective because he did not contest the district court's enhancing defendant's sentence under the sentencing guidelines career offender section (4B1.1) when the indictment did not make mention of any of defendant's prior convictions nor did counsel request the court to have the government prove beyond a reasonable doubt that the prior convictions are valid before the court enhanced defendant. . . . This Court lacks the authority to enhance a defendant's sentence beyond the statutory maximum based on facts that were not proven to the jury or expressly admitted by the defendant. See, Apprendi v. New Jersey, 530 U.S. 466, 147 L.Ed. 2d 435 (2000).

This argument is what is commonly referred to as the Apprendi/Blakely/Booker argument.[1] This argument fails for several reasons: Petitioner waived this argument in his

---

[1] See Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005).

Page 10 of 17

plea agreement, this argument does not apply retroactively to his sentence, and it does not apply to enhancements based on prior convictions.

In his plea agreement, Petitioner waived the right to appeal his sentence, directly or collaterally, on any ground except for an upward departure from the sentencing guidelines, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines.  (See paragraph B.5 of the written plea agreement, CR Dkt. #161.)

The Eleventh Circuit has held that an appeal waiver with language identical to that agreed to by Petitioner was broad enough to include an Apprendi/Blakely/Booker claim. Further, it found that none of the listed exceptions to the waiver applied.  United States v. Grinard-Henry, 399 F.3d 1294 (11th Cir. 2005), *cert. denied*, 544 U.S. 1041 (2005).  Such a "(w)aiver will be enforced if the government demonstrates either (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver."  United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997).  Here, the Court specifically questioned Petitioner about his understanding of the plea waiver:

> THE COURT:  And finally, there's a provision which limits your right to appeal your sentence and that's also part of this written plea agreement. That provision is called appeal of sentence waiver.  And it's around page 13.
>
> That provision states that you understand that you're going to receive a sentencing - - a sentence which is subject to the Federal Sentencing Guidelines.  And that you understand that such a sentence does not provide for parole.
>
> This provision states that you agree as part of your plea agreement with the Government to limit your right to appeal to three things.  The only

guidelines issue is an upwards departure from the guidelines if that happens. You can also appeal a sentence which is above the statutory maximum penalties and you can appeal a sentence which violates the law apart from the sentencing guidelines.

What this means, though, is that you cannot appeal or challenge your sentence before either the trial Court or a higher Court on any issue relating to the sentencing guidelines unless that concerns an upwards departure. Do each of you understand this?

THE DEFENDANT MILLS: Yes, ma'am.

THE DEFENDANT TURNER: Yes, ma'am.

THE DEFENDANT JENKINS: Yes, ma'am.

THE COURT: Have you had a chance to talk with your attorney about this specific provision?

THE DEFENDANT MILLS: Yes, ma'am.

THE DEFENDANT TURNER: Yes, ma'am.

THE DEFENDANT JENKINS: Yes, ma'am.

THE COURT: Mr. Mills, do you make the waiver of appeal knowingly?

THE DEFENDANT MILLS: Yes, ma'am.

THE COURT: Do you make it voluntarily?

THE DEFENDANT MILLS: Yes, ma'am.

THE COURT: Mr. Turner, do you make the waiver of appeal knowingly?

THE DEFENDANT TURNER: Yes, ma'am.

THE COURT: And do you make it voluntarily?

      THE DEFENDANT TURNER:   Yes, ma'am.

      THE COURT:   Mr. Jenkins, do you make the waiver of appeal knowingly?

      THE DEFENDANT JENKINS:   Yes, ma'am.

      THE COURT:   And do you make it voluntarily?

      THE DEFENDANT JENKINS:   Yes, ma'am.

(Guilty plea hearing transcript, pages 26-28.)

A defendant's waiver of his right to appeal "directly or collaterally" includes both a direct appeal and a collateral attack in a §2255 proceeding. See Williams v. United States, 396 F.3d 1340 (11th Cir. 2005), *cert. denied*, ____ U.S. ____, 126 S.Ct. 246 (2005). Therefore, Petitioner has effectively waived this argument and cannot now bring it in this §2255 motion.

Even if the Apprendi/Blakely/Booker argument were not waived, it would still fail because it does not apply retroactively to Petitioner's sentence. The reasoning underlying Apprendi and Blakely was applied by the U. S. Supreme Court in Booker to the federal sentencing guidelines. In Booker, the Supreme Court struck certain provisions in the federal sentencing guidelines to make it clear that they would be advisory. It is the mandatory nature of sentencing guidelines that make them unconstitutional if a sentencing court used facts not found by the jury or admitted by the defendant in fashioning a sentence. But the Booker decision is not retroactive to cases, like Petitioner's, that were final and on collateral review at the time of the decision. Varela v. United States, 400 F.3d 864 (11th Cir. 2005).

Petitioner's sentence was final on December 31, 2003, and these collateral review proceedings were pending when Booker was decided in January, 2005. Therefore, the Apprendi/Blakely/Booker argument provides no relief to Petitioner.

And, even had the Apprendi/Blakely/Booker argument applied, it would not have affected the career offender enhancement about which Jenkins complains. Prior convictions, both the fact of their existence and the quality of the offense, may be used when sentencing a defendant under the Guidelines. Almendarez-Torres v. United States, 523 U.S. 224 (1998). It is not necessary for the government to allege the existence or nature of the prior offenses in the indictment and they need not be proven beyond a reasonable doubt before a district court may use them for purposes of enhancing a sentence. United States v. Marseille, 377 F.3d 1249 (11th Cir. 2004). This reasoning was left undisturbed by Apprendi, Blakely and Booker. U.S. v. Shelton, 400 F.3d 1325 (11th Cir. 2005).

For all of the foregoing reasons, ground three will be denied.

**Ground Four:**   Defendant's appeal waiver was entered involuntarily as a result of ineffective assistance of counsel.

In support of ground four, Petitioner argues the following:

It is the assertion of the defendant that because defendant attacks the entire Sentencing Guidelines as being unconstitutional, the appeal waiver is unforceable (sic) in this case and that absence (sic) the advise of counsel, defendant would not have agreed to waive his rights to challenge a sentence in violation of the law.

The Eleventh Circuit has addressed this issue directly and has found it to be without merit. An appeal waiver just like Petitioner's was found valid and enforceable in United

States v. Grinard-Henry, 399 F.3d 1294 (11th Cir. 2005). Therefore, ground four will be denied.

**Ground Five:**   Counsel was ineffective for failing to argue that (for) Apprendi purposes, the maximum sentence to be used is the maximum sentence a judge may impose under the sentencing guidelines and not the maximum sentence under the statute, for the career offender provisions.

In support of ground five, Petitioner makes the following argument:

> After the wake of Blakely v. Washington, ____ U.S. ____, 124 S.Ct. 2531, ____ L.Ed. 2d ____, 2004 WL 1402697 (U.S. June 25, 2004), it is clear that the decision rendered in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000), is that the maximum sentence a judge may impose is the maximum a judge impose (sic) solely on the basis of the facts reflected in the jury verdict alone, or admitted by the defendant because the relevant statutory maximum sentence allowed in this case was the maximum sentence the judge could impose without any additional findings. It was clear error for the court to impose defendant's sentence as a career offender calculating from the relevant statutory maximum authorized for the offense rather than the maximum authorized by law.
>
> Specifically, in this case the court founds (sic) that the relevant statutory maximum sentence to be imposed pursuant to the career offender provisions was to be based on a life statutory maximum penalty. (See, P.S.I. Report at pag. 3 & 4, paragraph 26). However, it is the contention of the defendant that the relevant statutory maximum for the career offender purposes should have been calculated from defendant's maximum sentencing guideline range for the drugs involved with defendant's offense of conviction. In this case the relevant statutory maximum that should have been applied for the career offender purposes should have been the maximum sentence of 150 months (Twelve years, six months) given the defendant's base offense level of 26 - Category VI as to count one of the superseding indictment (26 is the base offense level when the defendant is involved in at least 500 grams but less than 2 kilograms of cocaine).
>
> Because the career offender provisions are tied directly to the offense statutory maximum, in this case defendant's maximum base offense level should have been level 24 - Category VI (100-125 months imprisonment), this be were (sic) defendant's statutory maximum sentence was 10 years or more,

but less than 15 years. See, e.g. ... § 4B1.1, Career Offender Provision:

| Offense Statutory Maximum | | Offense Level |
|---|---|---|
| (A) | Life | 37 |
| (B) | 25 years or more | 34 |
| (C) | 20 years or more, but less than 25 years | 32 |
| (D) | 15 years or more, but less than 20 years | 29 |
| (E) | <u>10 years or more, but less than 15 years</u> | <u>24</u> |
| (F) | 5 years or more, but less than 5 years | 17 |
| (G) | more than 1 years, but less than 5 years | 12 |

First, this argument deals with Petitioner's guideline sentence and does not come within any of the three exceptions to his appeal waiver. Therefore, this argument is barred by his appeal waiver as explained above.

Second, this argument fails because it is based on a misperception of the definition of the term "statutory maximum." Petitioner is defining that term as being the maximum guideline sentence prior to the application of the career offender enhancement. This is not the proper definition. The Eleventh Circuit has held that the term "statutory maximum" in a plea agreement permitting appeal in the limited circumstance of a sentence exceeding the statutory maximum, refers to "the longest sentence that the statute which punishes a crime permits a court to impose, regardless of whether the actual sentence must be shortened in a particular case because of the principles involved in the <u>Apprendi/Booker</u> line of decisions." <u>United States v. Rubbo</u>, 396 F.3d 1330 (11th Cir. 2005). <u>See also</u>, <u>Grinard-Henry</u> at 1296.

For these reasons, ground five will be denied.

## CONCLUSION

It is therefore ORDERED AND ADJUDGED that:

1. Grounds two, three, four and five are hereby DENIED.

2. As to ground one, an evidentiary hearing is hereby scheduled for **FRIDAY, AUGUST 25, 2006, AT 9:00 A.M.** at the Sam Gibbons U. S. Courthouse, 801 North Florida Avenue, Courtroom #13A, Tampa, Florida 33602. Time reserved: One (1) hour.

3. Counsel for the government shall take appropriate steps to ensure the attendance of the Petitioner at the hearing as well as his former counsel, ELTON J. GISSENDANNER, III, 1726 East Seventh Avenue, Tampa, Florida 33605, and any other witnesses deemed necessary to address the issue of whether Mr. Gissendanner was instructed by Petitioner to file an appeal in this case within the ten day period following sentencing.

4. Magistrate Judge Elizabeth Jenkins is hereby requested to appoint Petitioner new counsel for the purposes of the hearing, said counsel to secure the attendance of any witnesses deemed necessary by Petitioner to address this issue.

**DONE** and **ORDERED** in Tampa, Florida on June 29, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Magistrate Judge Elizabeth Jenkins
United States Marshal
Counsel/Parties of Record
Attorney Elton J. Gissendanner, III

F:\Docs\2004\04-cv-2546.deny 2255.wpd